IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID W. JAHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 2:06-cv-623 |
| | ) | |
| REGINALD JAMES WASHINGTON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW, the Defendants, Grocery Supply Company ("GSC") and Reginald James Washington, ("Washington") and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Honorable Court to grant summary judgment as to the Plaintiffs' claims for wantonness and negligent entrustment where there are no genuine issues of material fact as to those claims and the Defendants are entitled to judgment as a matter of law. In support of said motion, the Defendants state unto the Court as follows:

## NARRATIVE SUMMARY OF FACTS

On or about June 1, 2006, the Plaintiff David Jahn filed a Complaint in the Circuit Court of Butler County, Alabama against Reginald James Washington and Grocery Supply Company alleging: (1) wanton and negligent conduct; (2) negligent entrustment; and (3) respondeat superior. (See Defendants' Exhibit 1, Complaint p. 2, parg. 8-18). On or about July 17, 2006, Defendants Reginald James Washington and Grocery Supply Company filed a Notice of Removal, removing the case to this Court on the basis of diversity jurisdiction. (See Defendants' Exhibit 2, Notice of Removal).

This litigation stems from a motor vehicle accident which occurred on Interstate 65 northbound in Butler County, Alabama, late in the evening on October 5, 2005. (See Defendants' Exhibit 1, pg. 2, parg. 9). As a result of that motor vehicle accident, Plaintiff Jahn claims that he was caused to suffer severe personal injuries including, but not limited to, serious and permanent injuries. (See Exhibit 1, Complaint, pg. 2, parg. 11).

Late in the evening on October 5, 2006, Reginald Washington was traveling on Interstate 65 northbound in Butler County, Alabama, in the right hand lane at approximately 55 mph when his tractor-trailer hit a pothole in the roadway. (See Defendants' Exhibit 3, Affidavit of Reginald Washington). After hitting the pothole, the tractor-trailer was knocked into a concrete barrier located just outside the right hand lane of the highway. (See Defendant's Exhibit 3) After the tractor-trailer hit the concrete barrier, it moved back to the left into the interstate and at that point the trailer jackknifed. *Id.* The tractor-trailer came to a stop on Interstate 65 northbound on its side. *id.* Mr. Washington was trapped inside of the tractor-trailer and was unable to warn others about the situation. *id.* A few minutes later, David Jahn's vehicle collided with the tractor-trailer which was laying on its side on Interstate 65. *id.* Mr. Washington never had any opportunity to warn any oncoming motorists, including Plaintiff Jahn, that his tractor-trailer had overturned. *id.* Mr. Washington never saw Plaintiff Jahn's vehicle at any point prior to the accident occurring. *id.*

Reginald Washington has extensive experience driving commercial vehicles and has had an active commercial driver's license since 1982. *id.* During the 1980's he worked for J.B. Hunt and Adam's Brothers as a commercial driver. *id.* From 1990 through 1994 he drove a truck for a company called Tin Cup delivering produce. *id.* He

then worked for Southern Food, which had purchased Tin Cup, as a long distance driver from 1994 until 2001. *id.* Southern Food was purchased by Fresh America, and Mr. Washington worked for Fresh America as a long distance driver from January 2001 until July 2001 again delivering produce. *id.* At the time of the subject accident of October 5, 2005, Mr. Washington had over 20 years of truck driving experience. *id.*

Mr. Washington was employed with GSC from October 5, 2001 until January 10, 2006, when he quit his employment with the company. (See Exhibit 3). Mr. Washington had first applied for employment with GSC as a truck driver back on September 27, 2001. (See Exhibit 4, Affidavit of Harry Huelsbeck). In early October 2001 Mr. Washington's driving history and criminal history were investigated by GSC after receiving his application for employment. (See Exhibit 4). A motor vehicle records search was run that showed no motor vehicle accidents and only one seat belt violation from February 2000. *Id.* To be eligible for hire with GSC an applicant cannot have three moving violations and/or three preventable accidents, or any combination totaling three or more in the past three years, and cannot have two or more serious moving violations, which would constitute speeding which is 15 mph or more above the posted speed limit, within the past three years. *id.* Accordingly, Mr. Washington's driving record complied with company requirements to be eligible for hire as a truck driver. *id.*

In early October 2001, a State of Florida criminal background check was run on Mr. Washington. (See Exhibit 4). The results of that criminal background check revealed no criminal record for Mr. Washington. *Id.* Additionally, a medical examination was performed on Mr. Washington on October 10, 2001. *id.* The results of that examination revealed that Mr. Washington did not have any medical conditions that

3

precluded him from operating a tractor-trailer for GSC. *id.* Further, a pre-employment drug screen was performed on Mr. Washington and the results were negative for drug use. (See Exhibit 4).

During the application and interview process GSC learned that Mr. Washington had an active CDL and that he had graduated with excellent scores from a truck driving school in 1992. (See Exhibit 4). Further, Mr. Washington had extensive previous work experience operating large commercial vehicles for the delivery of grocery goods. *Id.* Prior to being hired by GSC, Mr. Washington was also given a road test operating a tractor-trailer on October 1, 2001. *id.* Mr. Washington passed all aspects of the road test. *id.* Ultimately, after meeting all prerequisites for employment with GSC as a truck driver, Mr. Washington was hired on October 15, 2001. *id.*

During the time that Mr. Washington was employed with GSC he was subject to random and post-accident drug tests, yearly motor vehicle records searches and regular medical examinations. (See Exhibit 4). From the date of his hire through the subject accident date of October 5, 2005, Mr. Washington met all standards to comply with company requirements necessary for him to operate a tractor-trailer in his employment as a truck driver with GSC. *Id.*.

Prior to the subject October 5, 2005, accident with Plaintiff Jahn, Mr. Washington was involved in one earlier accident occurring on September 13, 2004, in Madison County, Florida. (See Exhibit 3 & 4). That is the only other accident that Mr. Washington has been involved in while driving a commercial vehicle. (See Exhibit 3). The earlier September 13, 2004, accident did not prohibit Mr. Washington, according to GSC's policies, from operating a tractor-trailer on the date of the subject accident of

4

October 5, 2005. (See Exhibit 4). At the time of the accident on October 5, 2005, Mr. Washington was familiar with the tractor-trailer he was driving. (See Exhibit 4). There are no known mechanical defects with the tractor trailer that Mr. Washington was operating on October 5, 2005, that caused and/or contributed to the accident. (See Exhibits 3 & 4). Further, Mr. Washington suffered from no health conditions on the date of the accident that prevented him from operating the tractor-trailer. (See Exhibit 3). At no point has Mr. Washington's commercial driver's license been suspended, cancelled or revoked. (See Exhibit 3).

## STANDARD OF REVIEW

Under Rule 56(c) of the Fed. R. Civ. P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (*Id.* at 323, 106 S.Ct. 2548.) The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. (*Id.* at 322-324, 106 S. Ct. 2548.)

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S. Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 578, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 53(c).

## ARGUMENT

1.    **There is no evidence of wanton conduct by Defendant Washington in the operation of the tractor-trailer.**

Plaintiff has brought a claim of wantonness against the Defendants alleging that Mr. Washington wantonly operated his tractor-trailer causing it to collide with the vehicle being driven by David Jahn. (See Exhibit 1, Complaint, pg. 2, parg. 9).

Wantonness is defined as "the conscious doing of some act or the omission of some duty, while knowing of existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Fox Alarm Co. v. Wadsworth,* 2005 Ala. LEXIS 78, *23-24 (Ala. 2005) (quoting *Alfa Mutual Ins. Co. v.*

*Roush,* 723 So.2d 1250, 1256 (Ala. 1998)). *See also Bozeman v. Central Bank of the South,* 646 So.2d 601 (Ala. 1994). Wantonness is statutorily defined as "conduct which is carried on with a reckless or conscious disregard of the safety rights of others." Alabama Code § 6-11-20(C) (3). Under Alabama law, wantonness is defined as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Fox Alarm Co. v. Wadsworth,* 2005 Ala. LEXIS 78, *23-24 (Ala. 2005) (quoting *Alfa Mutual Ins. Co. v Roush,* 723 So.2d 1250, 1256 (Ala. 1998)). *See also Bozeman v. Central Bank of the South,* 646 So.2d 601 (Ala. 1994).

Wantonness is a different tort concept than negligence because of the requirement of culpability. A distinction between the two tort concepts is helpful in defining what is required to show wantonness:

> Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care;…simple negligence is the inadvertent omission of duty; and wanton and willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.

*Coca-Cola Bottling Co. v United, Inc. v. Stripling,* 622 So.2d 882, 885 (Ala. 1993).

Though it is not necessary to prove an intent to injure when looking at the alleged wantonness of an individual, it is necessary to prove some degree of conscious culpability on the part of the defendant. *Yamaha Motor Co. Ltd. v. Thornton,* 579 So.2d 619, 623 (Ala. 1991). Therefore, as stated, it is necessary to look at "the state of mind with which the act or omission is done or omitted," such as premeditation that the injury will occur as a result of an individual's actions, when determining if conduct is wanton. *Coca-Cola Bottling Co.,* 622 So.2d at 885.

7

As discussed, in order to prove wantonness, there must be a showing of a conscious disregard for the safety of others. No evidence has been presented by the Plaintiff to make such a showing. In his deposition, Plaintiff Jahn indicated that the first time he saw Mr. Washington's tractor-trailer on the roadway was when he was right up on the tractor-trailer just prior to colliding with it. (See Defendants' Exhibit 5, Deposition of David Jahn, p. 52, lines 6-14). Accordingly, the Plaintiff can offer no first hand knowledge as to how Mr. Washington was operating his tractor-trailer prior to it jackknifing and landing on its side.

Clearly Mr. Washington's description of how the accident occurred does not indicate that he acted wantonly in losing control of his tractor-trailer. At the time that Mr. Washington hit a pothole in the roadway of the interstate he was traveling 55 miles per hour, which was 15 miles per hour less than the posted speed limit of 70 miles per hour. (See Exhibit 3) After hitting the pothole, his tractor-trailer was knocked into a concrete barrier located just off the right hand side of the interstate. *Id.* His vehicle then moved back to the left and the trailer jackknifed with his tractor-trailer coming to rest overturned across the northbound lane of Interstate 65. *id.* After his tractor-trailer overturned he was trapped in the cab and did not have an opportunity to warn oncoming motorists that his tractor-trailer had overturned. *id.* Within a few minutes of his tractor-trailer overturning, Mr. Jahn's vehicle collided with the tractor-trailer while Mr. Washington was still inside the cab of the tractor. *id.*

Neither Mr. Washington nor GSC is aware of any defects with the tractor-trailer that contributed to and/or caused the accident. (See Exhibit 3 and 4). Further, Mr. Washington had a valid commercial driver's license, years of experience operating

8

tractor-trailers and no medical or physical conditions that prohibited him from operating a tractor–trailer on the night of October 5, 2005. (See Exhibit 3 and 4).

In *Beshears v. Greyhound Lines, Inc.,* F.Supp.2d 2006 WL 224032, p. *4 (M.D. Ala. 2006), Judge Fuller granted summary judgment as to the Plaintiff's wantonness claim alleged against a defendant bus driver. In reaching his decision, Judge Fuller recognized that although the driver intentionally drove his bus under an overpass causing the bus to strike the overpass, that there was no evidence that he did so knowing that the overpass was to low for his bus to fit through. Moreover, the Plaintiff did not present any evidence that the bus driver's state of mind revealed a conscious disregard for the safety of himself or others where he drove the bus under the overpass at a very slow rate of speed. Accordingly, viewing the evidence in a light most favorable to the Plaintiff summary judgment was appropriate as to the Plaintiff's wantonness claims arising out of the operation of the bus.

In this case, the Plaintiff has offered no evidence that Mr. Washington operated his tractor-trailer wantonly or that he acted wantonly in not warning oncoming motorists that his tractor-trailer had overturned on the interstate. There has simply been no showing of any action or inaction by Mr. Washington that would constitute wantonness. Mr. Washington's actions in operating his vehicle do not indicate that he had a state of mind reflecting a conscious disregard for the safety of others especially where he was traveling 15 mph below the posted speed limit. Further, Washington's failure to warn other motorists that his tractor-trailer had overturned was not a conscious decision. He was trapped and did not have an opportunity to do so before Plaintiff Jahn's vehicle collided with the tractor-trailer. Accordingly, there is no basis for the claim of

wantonness alleged against the Defendants and that claim should be dismissed as a matter of law.

## 2.     There is no evidence of negligent entrustment.

The elements of a cause of action for negligent entrustment are: (1) entrustment of the vehicle, (2) to an incompetent, (3) with knowledge that he is incompetent, (4) negligent or wanton use of the entrusted vehicle which proximately caused the plaintiff's damages, and (5) damages. *Penland v. Allsup,* 527 So.2d 715 (Ala. 1988); *Mason v. New,* 475 So.2d 854, 856 (Ala. 1985); and *Jackson v. Searcy,* 628 So.2d 887, 889 (Ala. Civ. App. 1993). If a cause of action for negligent entrustment is to succeed, the plaintiff must prove that the alleged entrustor knew or had reason to know of the entrustee's incompetent condition. *Liao v. Harry's Bar,* 574 So.2d 775, 780 (Ala. 1990). What has to be shown is the incompetence of the driver, i.e., that he is likely because of his youth, inexperience, or otherwise, to use a chattel in a manner involving unreasonable risk of physical harm to himself and others. *Mason v. New,* 475 So.2d 854, 856 (Ala. 1985). Knowledge by the entrustor of an incompetent condition of the driver is fundamental to the claim of negligent entrustment. Without proof of such knowledge, a claim for negligent entrustment must fail. *Day v. Williams,* 670 So.2d 914, 916 (Ala. 1995). It has been shown that evidence of the prior driving record of a defendant driver may be admissible in a negligent entrustment action to show knowledge on the part of the party entrusting the vehicle. *Rice v. Blackmon,* 559 So.2d 1070, 1071 (Ala. 1990).

The trial court in *Pryor v. Brown & Root U.S.A., Inc.,* 674 So.2d 45 (Ala. 1995) granted summary judgment as to an employer on a negligent entrustment claim brought against the employer as a result of an automobile accident. The Alabama Supreme Court

affirmed the summary judgment holding that evidence that the driver had a DUI in Texas ten years prior to the accident at issue and evidence of two speeding tickets received approximately two years prior to the accident at issue did not rise to the level of incompetence of the driver. The court stated that the plaintiff failed to present substantial evidence that the driver was incompetent or that his employer had any knowledge to indicate he was incompetent.

The Alabama Supreme Court affirmed a finding of summary judgment on behalf of an employer in a negligent entrustment claim in *Day v. Williams*, 670 So.2d 914 (Ala. 1995). The testimony in *Day* indicated that the employer was unaware that his employee did not have a driver's license. The Court also stated that if the employer had been aware of that fact, such fact alone would not have supported a finding of negligent entrustment. The record indicated that the employee was an experienced driver without any indication of incompetence. Further, although he had previously received tickets for driving without a license, he had received only one other traffic citation. Such citation was for speeding approximately two years prior to the accident. Thus, in affirming summary judgment, the Court held that the plaintiff presented no evidence to indicate that the employer had any reason to believe that the employee was an incompetent driver.

Harry Huelsbeck, the Pensacola division manager for Grocery Supply Company in Pensacola, Florida has provided an affidavit as to the qualifications necessary for a driver such as Washington. (See Exhibit 4). Huelsbeck's affidavit indicates that Reginald Washington first applied with GSC for the position of truck driver on September 27, 2001. *Id.* In early October 2001, pursuant to company policy, Washington's medical history, driving history and criminal history were investigated by

GSC. *id.* The criminal record check was negative for any criminal record for Washington. *id.* Also, the motor vehicle record check indicated no accidents and one traffic violation which was for a seat belt violation from February 2000. *id.* To be eligible for hire with GSC an applicant cannot have three moving violations and/or three preventable accidents, or any combination totaling three or more in the past three years and cannot have two or more serious moving violations, which would constitute speeding which is 15 mph or more above the posted speed limit, in the past three years. *id.* Accordingly, Mr. Washington's driving record complied with GSC's requirements. *id.*

Also, prior to being hired by Grocery Supply Company, Mr. Washington passed a pre-employment drug screen. (See Exhibit 4). Further, Mr. Washington was given a medical examination on October 10, 2001. *Id.* The results of the examination revealed that Mr. Washington did not have any medical conditions precluding him from operating a tractor-trailer for GSC.

Additionally, during the application and interview process it was learned that Mr. Washington had an active CDL and that he had graduated with excellent scores from a truck driving school in 1992. (See Exhibit 4). Mr. Washington also had extensive work experience operating large commercial vehicles for the delivery of grocery goods. *Id.* Finally, Mr. Washington was given a road test operating a tractor-trailer on October 1, 2001 and he passed all aspects of the road test. *id.* Accordingly, after having the necessary background, qualifications and passing all company required tests, Mr. Washington was hired for the position of truck driver at GSC on October 15, 2001. *id.*

Throughout his employment with GSC from October 15, 2001, through the accident date of October 5, 2005, Mr. Washington was subject to random and post-

12

accident drug tests, yearly motor vehicle record searches and regular medical examinations. (See Exhibit 4). At no time did Mr. Washington test positive during any random and/or post-accident drug tests. *Id.* Further, the yearly motor vehicle record searches performed and his regular medical examinations never precluded him from being qualified to operate a tractor-trailer for GSC. *id.*

Prior to the subject October 5, 2005 accident, Mr. Washington was involved in an accident on September 13, 2004. (See Exhibit 4).  The prior accident occurred in Madison County, Florida. *Id.* This earlier accident did not prohibit Mr. Washington, according to GSC policy, from operating a tractor-trailer for GSC on the date of the subject accident of October 5, 2005. *id.*

At the time the accident occurred on October 5, 2005, Mr. Washington was familiar with the type of tractor-trailer he was driving. (See Exhibit 4).  On the date the subject accident occurred Mr. Washington had been driving large commercial vehicles for over 20 years and had been delivering grocery goods via tractor-trailers dating back approximately 15 years to the early 1990's. (See Exhibit 3 and 4). Further, prior to the October 5, 2005, accident Mr. Washington had only been involved in one other accident on September 13, 2004, while operating a commercial vehicle during the course of his employment. (See Exhibit 3).

In this case, no evidence has been put before this Court that Mr. Washington was in anyway unqualified to be operating a tractor-trailer for GSC on the night of October 5, 2005.  The record is replete with evidence that Mr. Washington had over 20 years of experience driving tractor-trailers and during that time he had only been involved in one other accident.  Further, Mr. Washington's driving record at the time of both his hiring

and the October 5, 2005, accident clearly fit within GSC's policies in regards to driver's qualified to operate a commercial vehicle for the company. No evidence has been offered by the Plaintiff that Mr. Washington had any type of physical condition or mental defect making him unsafe or unfit to operate a tractor-trailer. The evidence before this Court indicates that Mr. Washington had a valid commercial drivers license, had an extensive prior history operating tractor-trailers and other large commercial trucks, that he had graduated from truck driving school in 1992 with excellent scores and that he had passed a driver's road test prior to being hired with GSC. The Plaintiff has failed to show any incompetence of Washington through his youth, inexperience or otherwise. To the contrary Mr. Washington had years of experience driving the same type of tractor-trailer and doing the same type of job that he was doing the night of October 5, 2005. GSC had no reason to believe on the night of October 5, 2005, that Washington would present an unreasonable risk of harm to himself or others.

On October 5, 2005, GSC was aware of Mr. Washington's earlier September 13, 2004, accident that occurred over a year prior to the subject accident in this case. That one accident did not prevent Washington from operating a tractor-trailer on behalf of GSC. Quite simply, the Plaintiffs cannot and has not offered substantial evidence that Mr. Washington was an incompetent driver nor that GSC had any notice that Mr. Washington was incompetent to serve as a truck driver for the company. Thus, GSC is due to be granted summary judgment as to the Plaintiff's claim of negligent entrustment.

3.    **The claim of negligent entrustment is improper because there is no dispute as to agency.**

In addition to the fact that there is no evidence of negligent entrustment on the part of Defendant Grocery Supply Company, a claim of negligent entrustment is

14

improper given the fact that there is no dispute as to the agency relationship in place between GSC and its employee, Defendant Washington. Negligent entrustment only becomes material in those cases where the agency relationship between the company and the driver is in dispute.

The majority of state and federal courts hold that once a corporation has admitted that the alleged tortfeasor is its agent and was acting within the scope of that agency relationship, the torts of negligent entrustment and supervision are subsumed by the negligence claim against the employer. *See Poplin v. Bestway Express,* 286 F.Supp.2d 1316, 1318 (M.D. Ala. 2003). Such majority view allows the plaintiff only to proceed against the employer under one theory of recovery. *See, e.g. McHaffie v. Bunch,* 891 S.W.2d 822, 826 (Mo. 1995), *Bowman v. Norfolk Southern Ry.,* 832 F.Supp. 1014, 1021 (D.S.C. 1993), *Southern Pac. Transp. Co. v. Builders Transp., Inc.,* 1993 U.S.Dist. LEXIS 7380 (E.D.La. 1993). These majority view jurisdictions posit:

> ...once an employer admits agency, it is only necessary for a plaintiff to show the negligence of the driver and unnecessary to pursue the alternate theory of negligent entrustment in order to hold the employer liable.

*Poplin,* 286 F.Supp. 2d at 1319; *see also Hackett v. Washington Metro. Area Transit Auth.,* 736 F.Supp. 8, 9 (D.D.C. 1990) (discussing *Houlihan v. McCall,* 78 A.2d 661 (Md. 1951).

As a result, the majority view jurisdictions find that a claim of negligent entrustment would impose no additional liability on the employer, and thus allowing the plaintiff to proceed with such a claim is precluded by the prejudice which would be imposed upon the defendants by allowing the claim. *Poplin,* 286 F.Supp.2d at 1319, *Elrod v. G&R Constr. Co.,* 628 S.W.2d 17, 19 (Ark. 1982). The *Poplin* Court recognizes

the fact that Alabama has not made a specific ruling on the issue, but that precedent indicates an adherence to the minority view which allows for two theories of recovery. Such a theory does not rest on the employer-employee relationship, but rather the employer's independent negligence.

Defendant GSC argues that this Court should recognize the majority view concerning the claim of negligent entrustment asserted against it. First of all, the majority view eliminates the need to move for a motion to sever the negligent entrustment claim from the other claims brought. For example, any evidence of Defendant Washington's prior driving record would be admissible and relevant in the negligent entrustment claim, but would be prejudicial in a negligence and/or wantonness claim based upon liability through respondeat superior. Under the majority view, if the agency relationship is admitted, as it is herein, only the negligence of the employee would need to be shown to impute liability to the employer. Thus, there would be none of the issues that arise with either giving limiting instructions to a jury to disregard certain evidence or moving to sever the claims. The majority view results in a simpler method of resolving the claims in an efficient manner.

Therefore, Defendant GSC requests this Court to recognize the majority view and prevent the Plaintiff from asserting the claim of negligent entrustment against it as an agency relationship is already admitted between Defendant GSC and Defendant Washington.

## CONCLUSION

WHEREFORE, ALL PREMISES CONSIDERED, Defendants Grocery Supply Company and Reginald Washington respectfully request this Honorable Court to grant

summary judgment as to Plaintiff's claims of wantonness and negligent entrustment where there are no disputes as to any material fact and these Defendants are entitled to judgment as a matter of law.

Submitted this the 3rd day of June, 2007.

_s/Eric D. Bonner_____

Eric D. Bonner ASB-7718-C63B
Attorney for Defendants

OF COUNSEL:

**Clark, Oncale, Hair & Smith, P.C.**
Post Office Box 530467
Birmingham, Alabama 35253
(205) 397-2900
(205) 397-2901 *fax*

## CERTIFICATE OF SERVICE

I herby certify that on this the 3rd day of June, 2007 a copy of the foregoing was electronically forwarded upon the following counsel of record:

Terry G. Key
Christy L. Hayes
COCHRAN, CHERRY, GIVENS,
SMITH, LANE & TAYLOR, P.C.
PO Box 927
Dothan, AL 36302

_s/Eric D. Bonner_____
OF COUNSEL